IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jeffrey D. BERLIN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Jeffrey D. BERLIN, Respondent.

Supreme Court

*No. 2007AP180–D. Decided January 17, 2008.*

2008 WI 4

(Also reported in 743 N.W.2d 683.)

¶ 1. PER CURIAM. We review referee Henry A. Field, Jr.'s recommendation that the license of Attorney Jeffrey D. Berlin to practice law in this state be suspended for a period of six months for eight counts of professional misconduct committed in connection with two client matters.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We further determine that the seriousness of Attorney Berlin's misconduct warrants the suspension of his license to practice law for six months, and that the costs of the proceeding, which are $676 as of July 24, 2007, should be assessed against him.

¶ 3. Attorney Berlin was admitted to practice law in Wisconsin in 1978. His license to practice law is currently under suspension for failure to pay State Bar

of Wisconsin membership dues. He was publicly reprimanded in August 2005 for three counts of failing to act with reasonable diligence and promptness in representing a client, three counts of failing to keep a client reasonably informed of the status of a matter, two trust account violations, and three counts of failing to refund unearned advanced fees. Public Reprimand of Jeffrey D. Berlin, 2005–4.

¶ 4. The Office of Lawyer Regulation (OLR) filed a complaint in this matter on January 22, 2007. Attorney Berlin responded stating that he did not intend to contest the charges because of his medical condition.[1] Accordingly, the matter was handled as a default proceeding, and the OLR complaint formed the basis for the referee's factual findings.

¶ 5. In May 2002 D.B. hired Attorney Berlin to represent him in a personal injury action for injuries D.B. sustained in an automobile accident. Attorney R.L. McNeely subsequently joined Attorney Berlin in this representation.[2]

¶ 6. On March 21, 2005, D.B. died from circumstances unrelated to the automobile accident. Following his death, D.B.'s wife, C.B., contacted either Attorney Berlin or Attorney McNeely regarding the personal injury claim.

¶ 7. On April 5, 2005, Attorney McNeely prepared and filed a special administration petition in the D.B. estate, requesting that the probate court appoint C.B.

---

[1] Attorney Berlin states that he has had six spinal surgeries since 2000, a major heart attack, a stroke, and has been deemed totally disabled by the Social Security Administration. He has stated that he will not practice law in Wisconsin again.

[2] Attorney McNeely is also the subject of a pending disciplinary complaint filed by the OLR. *OLR v. McNeely,* 2007AP208–D.

as special administrator of D.B.'s estate to permit her to resolve D.B.'s personal injury claims arising out of the May 2002 accident.

¶ 8. On April 22, 2005, Attorney McNeely filed a civil summons and complaint in Milwaukee County circuit court seeking damages on behalf of D.B.'s estate and C.B. relating to the May 2002 automobile accident.

¶ 9. On April 29, 2005, the Milwaukee County Child Support Agency filed four claims against D.B.'s estate for unpaid child support obligations totaling $126,200.28.

¶ 10. On or about May 24, 2005, American Family Insurance Group issued a check for $100,000 payable to "R.L. McNeely Law Office Clients' Trust Account" to settle C.B.'s claims in connection with the personal injury action. This settlement encompassed claims that C.B. made in her individual capacity, as well as claims made on behalf of D.B.'s estate. C.B. had not been appointed special administrator of D.B.'s estate at this time.

¶ 11. On June 3, 2005, Attorney McNeely and Attorney Berlin directed C.B. to sign — in her individual capacity and on behalf of D.B.'s estate — a written release of all claims relating to the May 2, 2002, auto accident. On June 6, 2005, Attorney McNeely filed a notice of voluntary dismissal in connection with the personal injury case.

¶ 12. On June 4, 2005, Attorney McNeely sent correspondence to the probate court that read:

> The above-captioned matter was scheduled for hearing on appointment of a special administrator, on June 22, 2005, at 2:30 p.m. The special administration was commenced to pursue a claim arising out of an automobile accident involving the deceased, occurring in

292

> May 2002. A civil suit was commenced .... We have
> been unable to serve the other driver involved in the
> accident, and there are no outside witnesses. Therefore,
> we have entered a voluntary dismissal in the civil case,
> and there is no longer a need to pursue special admin-
> istration. I request that you take the matter off the
> court's calendar ... , and close the file on this matter.

¶ 13. Prior to disbursing the $100,000 settlement proceeds, Attorney Berlin told Attorney McNeely that the American Family insurance adjuster handling the claim had authorized them to distribute the settlement proceeds as they saw fit. Attorney Berlin and Attorney McNeely decided that none of the settlement proceeds should go to D.B.'s estate. Rather, they decided to allocate the entire settlement (less attorney fees and litigation-related costs) to C.B. in her individual capacity. This amount totaled $57,199.26.[3]

¶ 14. Neither Attorney Berlin nor Attorney Mc-Neely discussed with C.B. the potential or actual conflicts of interest that might have existed between her individual interests and the interests of D.B.'s estate, and neither attorney obtained a written waiver from C.B. regarding these potential or actual conflicts. Neither Attorney McNeely nor Attorney Berlin advised the probate court that a settlement had been received relating to D.B.'s May 2002 auto accident or that these settlement proceeds had been disbursed. In addition, neither Attorney McNeely nor Attorney Berlin advised the Milwaukee County Child Support Agency of the settlement.

---

[3] Between June 3 and July 16, 2005, Attorney McNeely disbursed the $100,000 settlement proceeds received from American Family Insurance Group as follows: C.B.: $57,199.26; Attorney Berlin: $16,665; Attorney McNeely: $17,442.87; Litigation costs: $359.54; and LeSafre Intl. Co. (medical creditor): $ 8,333.33.

¶ 15. In the present disciplinary proceeding, the referee found that a portion of the $100,000 settlement payment properly belonged to the probate estate of D.B. C.B.'s special administration petition filed on April 5, 2005, should have been converted to a probate petition that listed a portion of the $100,000 as probate property. The referee found further that in May, June, and July of 2005, no one had the legal authority to take any action on behalf of D.B.'s estate regarding the personal injury claim relating to the automobile accident, including signing a release or authorizing the disbursement of settlement proceeds obtained from a legal action filed on behalf of the estate. The referee noted that C.B. was never actually named special administrator of D.B.'s estate.

¶ 16. While this matter was under investigation, Attorney Berlin told OLR staff that he knew the "State had liens that exceeded the proceeds" from the settlement, and that he was aware of these liens prior to the receipt of the settlement proceeds. Attorney Berlin explained that he exercised his "judgment to get the funds to the family" and that his "duty was to his client and not to the State of Wisconsin."

¶ 17. Attorney Berlin failed to respond to other attempts by the OLR to obtain information regarding this matter. Attorney Berlin failed to respond to a letter dated November 17, 2005, and, in response to a follow-up letter sent by the OLR on April 7, 2006, Attorney Berlin left a voicemail message for OLR staff expressing confusion as to what information was being requested. OLR staff made several subsequent attempts to contact Attorney Berlin by telephone to discuss this investigation, but were unable to reach him. Attorney Berlin subsequently failed to respond to a third letter from the OLR, sent on June 12, 2006.

¶ 18. The OLR alleged and the referee found that by participating in making an aggregate settlement of both C.B.'s individual claims and the claims of D.B.'s estate without consulting with and obtaining the informed consent of C.B. and someone authorized by the probate court to act on behalf of D.B.'s estate, Attorney Berlin engaged in a prohibited transaction, in violation of former SCR 20:1.8(g).[4]

██

¶ 19. The OLR alleged and the referee found that Attorney Berlin intended to allocate the entirety of the aggregate settlement of both C.B.'s individual claims and the claims of D.B.'s estate to C.B. by:

- Concurring with or advising McNeely to dismiss the probate case without first advising the probate court that a settlement of claims belonging to D.B.'s estate had been obtained and effectuated by a release C.B. signed while purporting to act as a special administrator of the estate.

---

[4] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* Supreme Court Order No. 04–07, 2007 WI 4, 293 Wis. 2d xv; and Supreme Court Order No. 06–04, 2007 WI 48, 297 Wis. 2d xlvii. Since the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

Former SCR 20:1.8(g) states: Conflict of interest: prohibited transactions

(g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

- Concurring with or advising McNeely to inform the probate court, "We have been unable to serve the other driver involved in the accident, and there are no outside witnesses. Therefore, we have entered a voluntary dismissal in the civil case, and there is no longer a need to pursue special administration . . ." without also informing the probate court that a settlement had been reached, which released the estate's claims.

- Concurring with or advising McNeely to distribute the entire $100,000 settlement to C.B. (after attorneys fees and litigation costs were deducted) when he knew that there were outstanding claims against D.B.'s estate, for unpaid child support and the aggregate settlement was paid as consideration for the release of any claims the estate might have had against the released parties.

Therefore, Attorney Berlin engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[5]

¶ 20. The OLR alleged and the referee found that by failing to provide OLR staff with information requested in letters dated November 17, 2005, April 7, 2006, and June 12, 2006, Attorney Berlin willfully failed to provide relevant information, fully answer questions, or furnish documents in the course of an OLR investigation, in violation of SCR 20:8.4(f)[6] as it relates to the requirements of SCR 22.03(6).[7]

---

[5] Former SCR 20:8.4(c) states that it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[6] Former SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[7] SCR 22.03 provides: Investigation.

¶ 21. The OLR complaint also alleged misconduct in connection with Attorney Berlin's representation of police officer K.K. In July 2004, when the events giving rise to this allegation of misconduct occurred, Attorney Berlin worked as a part-time staff attorney for the Wisconsin Professional Police Association (WPPA). Attorney Gordon E. McQuillen (McQuillen) was Attorney Berlin's supervisor at WPPA. McQuillen assigned Attorney Berlin to represent Officer K.K. in legal matters stemming from K.K.'s termination from the Village of Jackson police department.

¶ 22. On August 10, 2004, Attorney Berlin filed a complaint in Washington County circuit court naming the Village of Jackson as a defendant. The defendant answered the complaint, and the circuit court conducted a telephonic scheduling conference on February 25, 2005.

¶ 23. During the scheduling conference, the court established a briefing schedule that required Attorney Berlin to file a brief by April 1, 2005. Attorney Berlin never filed the brief.

¶ 24. Between February 25 and April 20, 2005, Attorney Berlin repeatedly assured McQuillen that he had timely filed the brief. McQuillen eventually discovered that Attorney Berlin had not filed the brief. Attorney Berlin also falsely assured McQuillen that he had contacted defense counsel and the circuit court, and that he had secured an extension of time to file this brief.

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

¶ 25. On April 20, 2005, defense counsel filed a motion to dismiss and scheduled a hearing on this motion for May 9, 2005.

¶ 26. On April 25, 2005, the court issued a notice of dismissal advising Attorney Berlin that K.K.'s case would be dismissed in 20 days unless good cause was shown. Attorney Berlin never responded.

¶ 27. On April 27, 2005, Attorney Berlin met with McQuillen, resigned from his position with WPPA, and told McQuillen that he had never filed the brief, had failed to secure the leave of defense counsel, and failed to ask the court for an extension. Although Attorney Berlin knew of the April 25, 2005, order to show cause, he did not inform McQuillen of it.

¶ 28. On May 5, 2005, K.K. called McQuillen asking why an order for dismissal of his case was posted on the circuit court website. McQuillen contacted Attorney Berlin and learned for the first time of the existence of the order to show cause.

¶ 29. At no time during his representation of K.K. did Attorney Berlin advise K.K. that he had failed to file the brief and obtain an extension of time to file the brief, or that the circuit court had issued an order to show cause why the case should not be dismissed.

¶ 30. On October 6, 2005, Attorney Berlin told the OLR that he "did the briefing" for K.K.'s case but claimed his files were with the WPPA. On November 4, 2005, Attorney Berlin told OLR that he would send OLR a copy of the briefs that he filed on K.K.'s behalf. On November 7, 2005, OLR received a copy of a brief from Attorney Berlin that purportedly related to K.K.'s case. Attorney Berlin's cover letter to OLR staff indicated that this brief "was submitted to the Circuit Court of Washington County."

¶ 31. According to the circuit court's website, no brief was filed on behalf of K.K. until June 1, 2005, more than one month after Attorney Berlin resigned his position with WPPA, and more than two weeks after Attorney Berlin had been replaced by successor counsel.

¶ 32. On December 9, 2005, OLR sent a letter to Attorney Berlin requesting that he respond to specific questions regarding K.K.'s grievance. Attorney Berlin did not respond. He also failed to respond to subsequent letters sent by the OLR on April 7, 2006, and June 12, 2006.

██

¶ 33. The OLR complaint alleged and the referee found that by failing to file a brief in accordance with the briefing schedule established by the Washington County circuit court or seek the consent of opposing counsel and the court to an extension of time to file the brief, and by failing to take any action with regard to the court's April 25, 2005, order to show cause why the case should not be dismissed, Attorney Berlin failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.[8]

¶ 34. In addition, the referee found that by failing to inform K.K. that he had not filed a brief as ordered by the court or obtain the consent of opposing counsel and the court to extend the time in which to file the brief, and by failing to inform K.K. that the court issued an order to show cause why the case should not be dismissed, Attorney Berlin failed to keep a client rea-

---

[8] Former SCR 20:1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

299

sonably informed about the status of a matter, in violation of SCR 20:1.4(a).[9]

¶ 35. The OLR alleged and the referee found that Attorney Berlin engaged in a course of conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c), by falsely assuring Mc-Quillen that he was "timely with respect to filing" the brief in K.K.'s case, and that he had contacted the court and defense counsel and secured an extension of time for filing his brief. In addition, Attorney Berlin failed to affirmatively advise McQuillen that the court had issued an order dated April 25, 2005, requiring K.K. to show cause why this case should not be dismissed.

¶ 36. The OLR alleged and the referee found that Attorney Berlin made a misrepresentation to the OLR in the course of an OLR investigation, in violation of SCR 20:8.4(f) as it relates to the requirements of SCR 22.03(6). Attorney Berlin sent OLR a copy of a brief in November 2005 that purportedly related to K.K.'s case, and advised the OLR in an enclosed cover letter that this brief "was submitted to the Circuit Court of Washington County" in response to OLR's inquiry concerning Attorney Berlin's representation of K.K. However, circuit court records indicated that no brief was filed on behalf of K.K. in this matter until June 1, 2005, more than one month after Attorney Berlin resigned his position with WPPA and more than two weeks after Attorney Berlin had been replaced by successor counsel.

¶ 37. Finally, by failing to provide OLR with information in the K.K. matter that OLR had requested

[9] Former SCR 20.1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

in letters dated December 9, 2005, April 7, 2006, and June 12, 2006, Attorney Berlin willfully failed to provide relevant information, fully answer questions, or furnish documents in the course of an OLR investigation, in violation of SCR 20:8.4(f) as it relates to the requirements of SCR 22.03(6).

¶ 38. The OLR requested a six-month suspension of Attorney Berlin's license to practice law, as well as imposition of the costs of the disciplinary proceeding. The referee recommended the same, without discussion. Neither party appealed the referee's report, such that this matter is submitted to the court for review of the referee's report and recommendation pursuant to SCR 22.17(2).

¶ 39. In conducting our review, we will affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law de novo. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. In accordance with our authority to supervise the practice of law in this state, we determine the level of discipline that is appropriate under the particular circumstances, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 40. The referee's findings of fact in this case have not been shown to be clearly erroneous, and we adopt them. We also agree with the referee's conclusions of law. We further agree with the referee's recommendation for a six-month suspension of Attorney Berlin's

license to practice law in Wisconsin. Finally, we find it appropriate to require Attorney Berlin to pay the full costs of this proceeding which, as of July 24, 2007, total $676.

¶ 41. IT IS ORDERED that the license of Jeffrey D. Berlin to practice law in Wisconsin is suspended for a period of six months, effective the date of this order.

¶ 42. IT IS FURTHER ORDERED that within 60 days of the date of this order Jeffrey D. Berlin pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Jeffrey D. Berlin to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 43. LOUIS B. BUTLER, JR., J., and ANNETTE KINGSLAND ZIEGLER, J., did not participate.